**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ABSOLUTE MARINE TOWING &**
**SALVAGE, INC.,**

                      **Plaintiff,**

-vs-                                                   **Case No. 6:09-cv-1712-Orl-31KRS**

**S/V INIKI, a 36' Jaguar Catamaran**
**Sailboat, its engines, tackle, equipment,**
**apparel, appurtenances, etc., and MARKEL**
**AMERICAN INSURANCE COMPANY,**

                      **defendants.**

_____

# ORDER

This matter comes before the Court on the Motion to Dismiss (Doc. 26) filed by Defendant Markel American Insurance Company ("Markel") and the response (Doc. 32) filed by the Plaintiff, Absolute Marine Towing & Salvage, Inc. ("Absolute Marine").

## I.    Background

This is an admiralty case. According to the allegations of the Second Amended Verified Complaint, which are accepted as true for purposes of resolving the instant motion, in March 2009 Defendant S/V Iniki broke free from her anchor and ran aground near Sebastian Inlet State Park. (Doc. 18 at 2). Her captain, Jeff Morgan ("Morgan"), contracted with Absolute Marine to salve the Iniki, which was being battered by the surf and had already taken on nearly four feet of water

and sand in her side cabins.[1]  (Doc. 18 at 3).  Employees of Absolute Marine repaired and ungrounded the vessel and towed it to Scorpion's New Port Marina, where it remains.  (Doc. 18 at 5).

On October 8, 2009, Absolute Marine filed a complaint against the vessel, asserting claims for salvage (Count I) and for maritime lien (Count II).  On December 1, 2009, Absolute Marine filed its Second Amended Verified Complaint, adding Markel as a defendant and asserting that Markel had provided a policy of marine insurance on the Iniki.  (Doc. 18 at 2).  Absolute Marine also added Count III, asserting that its efforts in salvaging the vessel and preventing its oil and other contaminants from polluting the waters had provided a direct pecuniary benefit to the insurance company. (Doc. 18 at 10).  Absolute Marine contends that Markel provided pollution liability coverage on the Iniki and would have been liable for the cost of clean-up if the vessel had broken up, or if Absolute Marine had not stopped the vessel from leaking pollutants such as motor oil into the water.  (Doc. 18 at 10).

Markel now seeks dismissal of the complaint on numerous grounds.  *Inter alia*, Markel contends that the Court lacks subject matter jurisdiction, that Florida's nonjoinder statute, Fla. Stat. § 627.4136(1), precludes a direct suit against it until Absolute Marine obtains a verdict against its insured, that the plaintiff has not stated a claim and has failed to join an indispensable party – Erickson.  Markel also argues that, contrary to Absolute Marine's characterization of its claim, it cannot assert a claim for "necessaries" under the facts alleged, and it has no entitlement to recover its attorney's fees.

---

[1]Morgan signed on behalf of the vessel's owner, Frederick Erickson ("Erickson"), who is not a party to this case.

## II.     Standards

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Conley v. Gibson*, 35 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), this Court must view the complaint in the light most favorable to the Plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232 (1974), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10©); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## III.    Analysis

### A.     Subject Matter Jurisdiction

Markel argues that the claim against it falls outside of admiralty jurisdiction. Article III of the Constitution extends the judicial power of the federal courts to "all cases of admiralty and maritime jurisdiction." U.S. Const. art. III, § 2, cl. 1. Congress implemented this clause of Article III by conferring on district courts exclusive, original jurisdiction of "[a]ny civil case of admiralty

or maritime jurisdiction" and "[a]ny prize brought into the United States and all proceedings for the condemnation of property taken as a prize." 28 U.S.C. § 1333.

In determining whether a contract falls within a court's admiralty jurisdiction, the nature and subject matter of the contract are the crucial considerations. *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 611 (1991). In the case of a service contract, courts should look to the subject matter of the contract and determine whether the services performed are maritime in nature. *Id.* at 612. Claims arising out of salvage operations are within the admiralty jurisdiction of the federal courts. *Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 640 F.2d 560, 566 (5th Cir, 1981).[2]

Because Counts I and II arise from the salvage contract between Absolute Marine and the Iniki's owner, and Absolute Marine's salvage efforts, the Court possesses admiralty jurisdiction over them. Because the Court possesses original jurisdiction over those claims, it may also exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims that are so related to them that they form part of the same case or controversy. *Exter Shipping Ltd. v. Kilakos*, 310 F.Supp.2d 1301, 1311 (N.D.Ga. 2004). Absolute Marine's effort to recover from Markel arises from the same incident as Counts I and II and is closely related to those counts. As such, the Court may exercise supplemental jurisdiction over Count III.

Markel next argues that the claim against it is barred by Florida's nonjoinder statute, Section 627.4136, which provides in pertinent part that

---

[2]In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

> It shall be a condition precedent to the accrual or maintenance of a cause of action against a liability insurer by a person not an insured under the terms of the liability insurance contract that such person shall first obtain a settlement or verdict against a person who is an insured under the terms of such policy for a cause of action which is covered by such policy.

Fla. Stat. § 627.4136(1). Absolute Marine has not settled with or obtained a verdict against Erickson, who obtained the insurance policy from Markel. However, Absolute Marine is not attempting to recover under the insurance contract. Instead, it is attempting to recover based on the benefit flowing to Markel as a result of its salvage of the Iniki, which is alleged to have saved Markel from having to pay out on the policy.[3] Where a third party asserts an independent cause of action grounded upon the benefit accruing to the insurer, the nonjoinder statute is not applicable. *Cresci v. The Yacht "Billfisher"*, 874 F.2d 1550 (11th Cir. 1989).

Next, Markel argues that Absolute Marine has failed to state a claim against it. The Court agrees. While admiralty law recognizes unjust enrichment claims, *see Gulf Oil Trading Co. v. Creole Supply*, 596 F.2d 515, 520 (2d Cir. 1979), Absolute Marine has not alleged that there is anything unjust or inequitable about Markel's conduct. Absolute Marine argues that *Cresci* recognizes the existence of the same type of claim it has brought against Markel – a claim against an insurer to recover the insurer's benefit resulting from the plaintiff's salvage efforts. But the *Cresci* court made clear that it was addressing a much more limited question:

> [The insurer] may have some interest in the salvage of the "Billfisher" so as to owe money to the one who salvages it. However, the question of whether [the insurer] owes salvage compensation to the appellant is not presently before us. We hold only

---

[3]More particularly, Absolute Marine contends that Markel provided pollution liability coverage to the vessel's owner, and would have become liable for the pollution caused by the destruction of the Iniki, were it not for Absolute Marine's pollution mitigation and prevention services. (Doc. 32 at 9).

> that [Florida's nonjoinder statute] does not bar the appellant's claim against [the insurer].

*Cresci* at 1551. Absolute Marine has not cited, and the Court's research has not uncovered, any case in which a party has been allowed to recover against an insurer for no other reason than because it did something that allowed the insurer to avoid having to pay out on its policy. Because Absolute Marine has alleged nothing more than this in Count III, that count fails to state a claim.[4]

## IV.     Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 26) is **GRANTED IN PART AND DENIED IN PART**. Count III of the Second Amended Verified Complaint (Doc. 18) is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim. In all other respects, the motion is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 10, 2010.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[4] Because Absolute has failed to state a claim against Markel, the Court will not consider Markel's remaining arguments.