UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
"IN ADMIRALTY"

ABSOLUTE MARINE TOWING
& SALVAGE, INC.,

      Plaintiff                              CASE NO.: 6:09-cv-01712-GAP-KRS

vs.

S/V INIKI, a 36'JAGUAR Catamaran Sailboat, its engines, tackle, equipment, apparel, appurtenances, etc., *in rem*, FREDERICK ERICKSON, *in personam*, and MARKEL AMERICAN INSURANCE COMPANY, *in personam*,

      Defendant.
_____/

**MARKEL AMERICAN INSURANCE COMPANY'S MOTION TO DISMISS SECOND AMENDED VERIFIED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**

COMES NOW, Defendant, MARKEL AMERICAN INSURANCE CO. ("MARKEL"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 12 moves to Dismiss the Second Amended Verified Complaint filed by ABSOLUTE MARINE TOWING & SALVAGE, INC. and states as follows:

1. The Second Amended Verified Complaint fails to properly plead personal jurisdiction and fails to state a claim upon which relief can be granted in admiralty jurisdiction as to the allegations against MARKEL.

2. This case was initially brought by a salvor for the contractual salvage of the vessel *S/V Iniki* after she allegedly broke from her moorings on March 11, 2009 and became grounded



on the beach near the Sebastian Inlet and Plaintiff incorporated common law salvage claims and a claim for "necessaries."

3. On February 10, 2010, the Court granted MARKEL's first motion to dismiss, specifically noting PLAINTIFF "ha[d] not cited, and the Court's research ha[d] not uncovered, any case in which a party has been allowed to recover against an insurer for no other reason than because it did something that allowed the insurer to avoid having to pay out on its policy." D.E. 34, pg. 6.

4. PLAINTIFF then sought leave to amend its Complaint against MARKEL, and to name the owner of the vessel as a defendant. [D.E. 35]

5. However, PLAINTIFF, without seeking leave to do so, also switched its legal theory against the vessel *in rem* for a maritime lien *for necessaries* [D.E. 18, ¶31, wherein the "necessaries" were salvage] to a maritime lien for salvage and pollution prevention/mitigation. [D.E. 37, ¶37].

6. Insofar as the newest version of Plaintiff's Complaint relates to MARKEL, PLAINTIFF added two equitable claims against MARKEL sounding in "quantum meruit" and "unjust enrichment." Plaintiff does not allege that MARKEL accepted or authorized any of the contract salvage services prior to, or concurrent with, their performance.

7. Defendant MARKEL moves for a dismissal with prejudice of the equitable claims of the Second Amended Verified Complaint, because, *inter alia* subject matter jurisdiction is questioned, personal jurisdiction is not sufficiently pleaded to infer it, and the pleading fails to state a claim upon which relief can be granted.

WHEREFORE, in support of dismissal MARKEL submits the following Memorandum of Law on these points.



## MEMORANDUM OF LAW

I. **Plaintiff has failed to plead sufficient facts to establish jurisdiction over Defendant and Personal Jurisdiction over MARKEL cannot be presumed:**

PLAINTIFF has the initial burden to make "a prima facie showing of the facts on which jurisdiction is predicated." *Rubaii v. Lakewood Pipe of Texas, Inc.*, 695 F.2d 541, 544 (11th Cir. Fla. 1983)(citing *Product Promotions Inc. v. Cousteau*, 495 F.2d 483, 491 (5th Cir.1974)). *See also Walack v. Worldwide Machinery Sales, Inc.*, 278 F. Supp. 2d 1358, 1365 (M.D. Fla. 2003); *Cable/Home Communication Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990)(describing the plaintiff's burden as the requirement to state a "prima facie case of personal jurisdiction over the nonresident defendant"). Florida courts require two inquires regarding personal jurisdiction over a nonresident, first it must be determined that the Complaint alleges sufficient ultimate facts to bring the action within the ambit of the statute; and if it does, the next inquiry is whether sufficient "minimum contacts" are demonstrated to satisfy due process requirements. See *Venetian Salami Co. v. Parthenals*, 554 So. 2d 502, (Fla. 1989)[1]. Plaintiff's allegations are facially deficient and do not meet the first prong of *Venetian Salami*.

In fact, PLAINTIFF has only cursorily pleaded that MARKEL sells and adjusts insurance policies in the state of Florida. D.E. 37, ¶7. These sparse allegations are clearly insufficient to make the *prima facie* showing on which jurisdiction is predicated under *Product Promotions, Inc., supra*. MARKEL did write a policy of insurance to Mr. Erickson, a Florida resident. That alone is insufficient, when as here, the cause of action is not based on the contract, unless the cause of action "arises from" that purposeful availment. Florida's long arm statute provides, *inter alia,* that a person is subject to the jurisdiction of the courts of Florida for any *cause of*

---

[1] A federal court examines the Florida long arm statute as would the Florida Supreme Court because the reach of the statute is a question of state law. *Oriental Imports and Exports, Inc., v. Maduro & Curiel's Bank, N.V.*, 701 F. 2d 889, 890-891 (11th Cir. 1983); *Structual Panels Inc. v. Texas Aluminum Ind. Inc.*, 874 F. Supp. 1058, 1064(MD.Fla.1993).



*action arising from* the doing of ... contracting to insure any person, property, or risk located within the state of Florida at the time of contracting. Fla.Stat. 48.193(1)(d) (emphasis added). In the present matter, PLAINTIFF has not alleged sufficient facts to establish that this Court has personal jurisdiction over MARKEL pursuant to Florida's long arm statute, Section 48.193(Fla. Stat. 2010)

PLAINTIFF's causes of action against MARKEL clearly do not arise under the contract of insurance, and Plaintiff specifically states that they are "independent causes of action accruing directly to the defendant MARKEL." See D.E. 37 at ¶48 and ¶61 ("...asserts this independent cause of action upon the benefit accruing directly to Defendant..."). As such, it is repugnant to principles of due process to subject an out of state corporation to personal jurisdiction for causes of action not arising out of its purposeful availment of the forum state as required by due process principles codified by § 48.193 (1)(d) (Fla. Stat. 2010)

No claim of general personal jurisdiction is set forth in the First Amended Complaint. Thus, there are no reasonable inferences to be construed in favor of Plaintiff. Assuming *arguendo* Plaintiff pleaded and proved general jurisdiction over the Defendant such that "connexity" would not be required between the cause of action and Defendant's contacts, the purposeful availment requirement nonetheless operates to prevent a defendant from being hailed into a jurisdiction solely as a result of such things as the "...unilateral activity of another party or third person." See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980). That is what plaintiff is trying to do in this case by virtue of pleading equitable claims against an out of state insurer (with whom privity is lacking) based on the Defendant's issuance of an insurance policy to a Florida insured. In *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223-24, the court was influenced by



the fact that the nonresident corporation's activities, though minimal, specifically gave rise to the liabilities being sued on. Such is not the case here.

As such, PLAINTIFF has failed to plead a prima facie case of personal jurisdiction over MARKEL and the court cannot infer it.

## II. The court should not exercise its discretionary supplemental jurisdiction for equitable claims

The supplemental jurisdiction statute, 28 USC 1367, applies to claims which the primary claim is within the Court's admiralty jurisdiction. Where this is so, it is said that claims against other parties that arise out of a common nucleus of operative facts with the admiralty claim are within the court's supplemental jurisdiction. Moore's Fed. Practice §106.05.

The exercise of "supplemental jurisdiction" is discretionary. The Court should not exercise its discretion in favor of jurisdiction. A district court may decline to exercise supplemental jurisdiction where:

(1) The claim raises a novel or complex issue of state law

(2) The claim substantially predominates over the claim or claims over which the court has original jurisdiction.

(3) The court has dismissed all claims over which it had original jurisdiction; or

(4) In exceptional circumstances there are other compelling reasons for declining jurisdiction.

*Owen Equip. & Erection Co. v. Kroger, 437 US 365, 376 (1978).*

Defendant respectfully submits that the Court should not exercise supplemental jurisdiction because (1) the equitable claims raise novel issues of state law and there are exceptional circumstances present to decline jurisdiction. These are intertwined.

First while an Article III court may have jurisdiction to exercise equitable powers, there is no federal common law of equity. Plaintiff's Second Amended Verified Complaint does not



allege the basis for asserting such a claim or whether Florida or some other jurisdiction's law should apply.

Additionally, as a general corollary of equitable principles, equity generally does not lie where one has an adequate remedy at law. Plaintiff has not pleaded that it does not have an adequate remedy *in rem* against the vessel. Plaintiff has now pleaded a breach of contract claim against the vessel owner. [D.E. 37, Count I: Breach of Maritime Contract]. MARKEL is not jointly liable to Plaintiff. There is no joint and several liability of all Defendants to Plaintiff, nor is it alleged.

While Plaintiff has separately invoked the Court's admiralty jurisdiction over the vessel and her owner, the Court should nonetheless abstain from invoking Florida equity in order to fabricate a rule of decision. Additionally, maritime law should not be used to create a new remedy for alleged third party beneficiaries where insurance coverage does not lie.

Here, between its First Complaint through the Amended Complaint and to the Second Amended Verified Complaint, Plaintiff has already changed its lien theory, beginning with of one for "necessaries" pursuant to the Federal Maritime Lien Act (See Amended Verified Complaint, D.E. 18, ¶31) and contract salvage for a sum certain (D.E. 18, ¶33) and common law salvage (Amended Verified Complaint, D.E. 18, ¶23) to that of Breach of Express Contract of Salvage against Erickson (Second Amended Verified Complaint, D.E. 37, ¶26) and *in rem* salvage only (Second Amended Verified Complaint, D.E. 37, ¶36).

Federal courts should be slow to entertain novel questions of State law which are addressed more appropriately by State courts. *Hallco Tex v. McMullen County*, 934 F. Supp. 238 (S.D. Tex. 1996) affd 109 F.3d 768 (1997); *Bennet v. Ford Motor Co.*, 236 F. Supp. 2d 528 (D.S.C. 2002)(where Federal court could not extend declination of supplemental jurisdiction



afforded consumer an opportunity to pursue novel claim of first impression in State court and on up though courts of appeal). Accordingly, the court should not accept Plaintiff's supplemental jurisdiction claim.

### III. Count III: A cause of action for Quantum Meruit does not lie

Quantum meruit is the name for the legal doctrine which, in the absence of an express agreement, imposes legal liability on a contract that the law implies from facts where one receives goods or services from another under circumstances where in the normal course of common affairs a reasonable person receiving such benefit would ordinarily expect to pay for it. *Osteen v. Morris*, 481 So.2d 1287, 1289-1290 (Fla. 5th DCA 1986).

In Florida, "[t]o satisfy the elements of quantum meruit, a plaintiff must show that the plaintiff provided *and the defendant assented to* and received, a benefit in the form of goods or services under circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it." *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1194 (11th Cir. 2009)(emphasis added)(internal citations omitted).

In an analogous situation to the present matter, CSX Transportation sought reimbursement for removal and salvage of 16 barges that broke free from their moorings during Hurricane Katrina. *CSX Transp., Inc. v. Cooper Marine & Timberlands Corp.*, 2009 U.S. Dist. LEXIS 56189 (S.D. Ala. 2009). CSX alleged quantum meruit, to which the defendants responded that they never knowingly accepted CSX's services because they were not aware of the services until after they occurred. *Id.* at *11.

The Court noted that under Alabama law[2], it was clear that knowledge that the service *is*

---

[2] Alabama law on quantum meruit is strikingly similar to Florida law. PLAINTIFF has not alleged diversity jurisdiction as a basis for subject matter jurisdiction. PLAINTIFF has merely alleged the Court has "supplemental" subject matter jurisdiction over MARKEL by virtue of the Court's Admiralty jurisdiction created by the Court's *in rem* jurisdiction over the vessel (which defendant MARKEL does not own).



*being rendered* is the key to a court being permitted to imply a contract in law. *Id.* at *12 (emphasis in original). Because the defendants were not aware of the services prior to their rendering, the Court found that CSX's quantum meruit claim failed. *Id.* at *12-13.

In other words, to plead a quantum meruit claim against MARKEL, PLAINTIFF must allege facts that show that PLAINTIFF provided, *and MARKEL assented* to and received, a benefit in the form of goods or circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it. *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1194 (11th Cir. 2009)(emphasis added).[3]

In the present matter, PLAINTIFF has not alleged that MARKEL assented to the services described in the complaint. In fact, PLAINTIFF's Second Amended Verified Complaint admits that MARKEL received notice of the loss on or about September 14, 2009 – over six months <u>after</u> PLAINTIFF's salvage operation. D.E. 37, ¶57.

PLAINTIFF does, however, in new allegations now allege that MARKEL had knowledge of, and agreed to, the salvage operation prior to its initiation, through Captain Morton's[4] conduct. See D.E. 37, ¶45. PLAINTIFF cozeningly implies a principal-agent relationship between MARKEL and Captain Morton; however, this attempt fails on several grounds. D.E. 37, ¶45.

While PLAINTIFF alleges that Captain Morton was the agent of MARKEL's insured, PLAINTIFF does not allege that Captain Morton was MARKEL's agent; nor does PLAINTIFF allege that MARKEL's insured was an agent of MARKEL. In fact the salvage contract appended to the Second Amended Verified Complaint indicates that it was signed only "for Erickson." D.E. 37- 2.

---

[3] PLAINTIFF alleges the benefit conferred was the insurer's nonpayment of a claim. Even assuming arguendo that the insurer somehow ratified or condoned the salvor's actions prior to their being furnished, PLAINTIFF erroneously assumes the conferrence of a benefit.
[4] It is unknown whether he is a captain, but based on MARKEL's investigation, his name is Morton.



It is true that the law will sometimes impute the knowledge of an agent to a principal. See generally, *Anderson v. Walthal*, 468 So. 2d 291, 295 (Fla. Dist. Ct. App. 1st Dist. 1985); *Kusch v. Ballard*, 645 So. 2d 1035, 1037 (Fla. Dist. Ct. App. 4th Dist. 1994). However, in order to establish that Captain Morton was MARKEL's agent, Plaintiff is required to plead that Captain Morton had either express or apparent authority to act on MARKEL's behalf.

**Express Authority:**

To establish an actual agency relationship, the following elements must be established: "(1) acknowledgement by the principal that the agent will act for it, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *Rubin v. Gabay*, 979 So. 2d 988 (Fla. 4th DCA 2008)(citing *State v. Am. Tobacco Co.*, 707 So. 2d 851, 854 (Fla. 4th DCA 1998)).

PLAINTIFF fails to allege a single fact that would support *any* of the elements necessary to establish that Captain Morton was MARKEL's actual agent: PLAINTIFF has not plead that MARKEL acknowledged that Captain Morton would act for MARKEL; PLAINTIFF has not plead that Captain Morton accepted an undertaking from MARKEL; *and* PLAINTIFF has not plead MARKEL's control over Captain Morton.

Accordingly, PLAINTIFF has failed to plead a prima facie case of express authority sufficient to impute Captain Morton's knowledge and conduct on MARKEL.

**Apparent Agency:**

"Apparent authority" does not arise from the subjective understanding of the person dealing with the purported agent, nor from appearances created by the purported agent himself; instead, "apparent authority" exists *only where the principal* creates the appearance of an agency relationship. *Spence, Payne, Masington & Grossman, P.A. v. Philip M. Gerson, P.A.*, 483 So. 2d



775, 777 (Fla. 3rd DCA 1986)(emphasis added)(quoting *Orlando Executive Park, Inc. v. P.D.R.*, 402 So.2d 442, 449 n.5 (Fla. 5th DCA 1981), approved, 433 So.2d 491 (Fla. 1983); *Owen Industries, Inc. v. Taylor*, 354 So.2d 1259 (Fla. 2d DCA 1978); *Taco Bell of California v. Zappone*, 324 So.2d 121 (Fla. 2d DCA 1975); *H.S.A., Inc. v. Harris-In-Hollywood, Inc.*, 285 So.2d 690 (Fla. 4th DCA 1973), cert. dismissed, 290 So.2d 493 (Fla. 1974).

In the instant case, PLAINTIFF has not actually plead the apparent authority of Captain Morton to act on behalf of MARKEL. Nor has PLAINTIFF alleged that MARKEL created the appearance of an agency relationship with Captain Morton.

Accordingly, PLAINTIFF has failed to plead a prima facie case of apparent authority sufficient to impute Captain Morton's knowledge and conduct on MARKEL.

Therefore, because PLAINTIFF has failed to plead that MARKEL assented, either directly or through an agent, to the salvage services prior to the time they were performed, PLAINTIFF has failed to state a claim upon which relief may be granted and the Quantum Meruit claim must be dismissed.

### IV. Count IV: A cause of action for Unjust Enrichment does not lie

The elements of a cause of action for unjust enrichment are: 1) the plaintiff conferred a benefit on defendant of which the defendant was aware, 2) the defendant voluntarily accepted and retained the benefit conferred, and 3) the circumstances are such that it is inequitable for Defendant to retain the benefit without paying Plaintiff for it. *Greenfield v. Manor Care*, 705 So.2d 926, 930 (Fla. 4th DCA 1997). See also *Nova Info. Sys. v. Greenwich Ins. Co.*, 2002 U.S. Dist. LEXIS 26365 (M.D. Fla. 2002); *Huntsman Packaging Corp. v. Kerry Packaging Corp.*, 992 F. Supp. 1439, (M.D. Fla. 1998); and *Coffee Pot Plaza P'ship v. Arrow Air Conditioning and Refrigeration, Inc.*, 412 So.2d 883, 884 (Fla. 2d DCA 1982).

In *Coffee Pot Plaza P'ship v. Arrow Air Conditioning & Refrigeration*, 412 So.2d 883,



884 (Fla. 2d DCA 1982), the defendant, Coffee Pot Plaza, owned a shopping center in which a tenant contracted with the plaintiff for the repair and installation of refrigeration equipment. *Id.* at 883. The tenant never paid the plaintiff for the work. *Id.* at 884. The tenant also failed to pay rent to defendant Coffee Pot Plaza, and Coffee Pot Plaza terminated the lease. *Id.* The plaintiff alleged that Coffee Pot Plaza was unjustly enriched by virtue of the service and repairs to the equipment on Coffee Pot Plaza's property. *Id.*

The Second District Court of Appeal overturned the unjust enrichment award on the basis that Coffee Pot Plaza did not request the services, noting that "[w]here unjust enrichment is asserted, a party is liable for services rendered only when he requests the other party to perform the services or knowingly and voluntarily accepts their benefits." *Id.*

Also, in *E&M Marine Corp. v. First Union Nat'l Bank*, 783 So.2d 311, 312 (Fla. 3d DCA 2001), a marine repair company alleged unjust enrichment against a bank that re-possessed a vessel after the owner of the vessel failed to make payments to the bank and the repair company. Citing the *Coffee Pot Plaza* decision, *supra*, the Third District Court of Appeal affirmed the trial court's denial of an award on the basis that the bank neither authorized nor knew about the repairs until <u>after</u> the repairs were made. *E&M Marine Corp.*, at 312.

In the present matter, PLAINTIFF has not alleged that MARKEL requested or authorized that the salvage services be performed. In fact, PLAINTIFF's Second Amended Verified Complaint only pleads that MARKEL received notice of the loss on September 14, 2009, more than six months *after* PLAINTIFF performed and invoiced its services. *See* D.E. 37, ¶57. As in *Coffee Pot Plaza*, "[PLAINTIFF] contracted with [the defendant-vessel] to do the work, and it must look to [them] for payment." *Coffee Pot Plaza*, at 884.

Furthermore, in *Continental Cas. Co. v. Marx*, 1985 Fla. App. LEXIS 16638 (Fla. 3d



DCA 1985), an attorney (Marx) defended Continental's insureds under a policy of insurance which provided for the defense of legal actions. Marx sued Continental for the reasonable value of his services under quantum meruit. *Id.*

Marx advanced two theories of recovery against Continental: 1) that he was a third party beneficiary under Continental's policy due to the requirement that Continental defend its insureds and 2) that there was an implied contract between Continental and Marx. *Id.*

The Third District Court of Appeals found there was "utterly no cognizable legal basis upon which Marx's recovery against Continental [could] be sustained." *Id.* The Court found that Marx could not maintain an action upon the insurance policy because Marx was not a third party beneficiary. *Id.*

With respect to Marx's attempt to plead implied contract, the Court stated:

> There is...no merit to the desultorily advanced claim that Marx may recover under an 'implied contract' for him to render services on behalf of Continental. Since Marx was hired by and represented only the Dashes...it is clear that no such agreement existed.

*Id.*

As in *Continental*, PLAINTIFF was retained by the vessel and/or her owner. There was no implied contract for PLAINTIFF to render services on behalf of MARKEL, and PLAINTIFF's attempt to sue MARKEL under implied contract theories must fail.

### V. **Dismissal with Prejudice is Warranted:**

While leave to amend should ordinarily be freely given, Fed. R. Civ. P. 15, under *Foman v. Davis*, 371 U.S. 178, 182-83 (1962), a district court may properly deny leave to amend the complaint when such amendment would be futile.

The Eleventh Circuit has found that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal. *Burger King Corp. v. Weaver*, 169 F.3d



1310, 1320 (11th Cir. 1999) (citation omitted). See also *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-1263 (11th Cir. 2004)(amendment is futile where the amended complaint would still be subject to dismissal).

As the Court noted in the previous Order dismissing the prior counts against MARKEL, PLAINTIFF "ha[d] not cited, and the Court's research ha[d] not uncovered, any case in which a party has been allowed to recover against an insurer for no other reason than because it did something that allowed the insurer to avoid having to pay out on its policy." D.E. 34, pg. 6.

PLAINTIFF cannot, in good faith, allege any set of facts that would permit a salvor to recover a salvage award from a third-party insurance company under an insurance policy that did not provide for salvage. Moreover, PLAINTIFF's equity claims fail because PLAINTIFF has already admitted in its Second Amended <u>Verified</u> Complaint that MARKEL was put on notice of the subject salvage six months *after* PLAINTIFF performed under the contract. Additionally, the alleged equitable claims are purely speculative in view of the glaring differences pertaining to the Defendant's lack of knowledge of the circumstance of the salvage contemporaneous with its performance. "To survive dismissal, the complaint's allegations must plausibly suggest that the Plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the Plaintiff's complaint should be dismissed. *James River Ins. Co. v. Ground Down Eng'g. Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008)(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Accordingly, further amendment would be futile, and dismissal with prejudice as to the allegations against MARKEL is warranted.

## CONCLUSION

WHEREFORE Defendant MARKEL AMERICAN INSURANCE COMPANY prays that the Second Amended Verified Complaint be dismissed with prejudice and costs to MARKEL.



## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on April 16, 2010 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the forgoing document is being served this day on Frank D. Butler, Esq., The Law Offices of Frank D. Butler, P.A., 10550 U.S. Hwy. 19 North, Pinellas Park FL 33782, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner.

RESPECTFULLY SUBMITTED,

McALPIN CONROY, P.A.
2805 Brickell BayView Centre
80 Southwest 8th Street
Miami, Florida 33130
Telephone: 305-810-5400
Facsimile: 305-810-5401

By: /s/ Michael E. Conroy
MICHAEL E. CONROY
MConroy@McAlpinConroy.com
Fla. Bar No.: 0845434
CRAIG P. LISZT
CLiszt@McAlpinConroy.com
Florida Bar No.: 063414

